# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| KAREN DENISE COLEMAN )<br>    **Plaintiff,** )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, *Acting* )<br>*Commissioner of Social Security*, )<br>    **Defendant.** ) | CIVIL ACTION NO. 1:18-00195-N |

## MEMORANDUM OPINION AND ORDER

Plaintiff Karen Denise Coleman brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. Upon consideration of the parties' briefs (Docs. 14, 17) and those portions of the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument held November 27, 2018, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under § 1383(c)(3) and sentence four of § 405(g).[1]

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Doc. 21).

## I. *Background*

On March 20, 2015, Coleman filed a Title XVI application for supplemental security income, alleging disability beginning November 27, 2013.[2] After her application was initially denied on August 11, 2015, Coleman requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. A hearing was held with an ALJ on February 13, 2017. On May 1, 2017, the ALJ issued an unfavorable decision on Coleman's applications, finding her not disabled under the Social Security Act and thus not entitled to benefits. (*See* R. 15).

The Commissioner's decision on Coleman's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's decision on March 5, 2018. Coleman subsequently filed this action under § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of

---

[2] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

2

the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin*

3

*v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether substantial evidence

---

[3] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211,

4

exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks

---

1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

5

omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per

curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251,

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III. *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Coleman's earnings did not equate to the level of substantial gainful activity as defined in 20 CFR 416.974 and that she had not engaged in substantial gainful activity since the application date, March 20, 2015[6]. (R. 17). At Step Two, the ALJ determined that Coleman had the following severe impairments: hepatitis C, narcolepsy, personality disorder, and a history of substance abuse. (R. 17). The ALJ concluded that Coleman's impairments did not "have more than a *de minimis* effect on the claimant's ability to perform basic work activities, and, therefore, are not 'severe' disabling impairments." (R. 17) At Step Three, the ALJ found that Coleman did not have

---

[6] "The record reveals that the claimant earned $339 in the fourth quarter of 2015, $64 in the first quarter of 2016, and $64 in the second quarter of 2016. (Exhibits C4D and C8D)."(R. 17).

9

an impairment or a combination of impairments that met or equaled the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 19 – 20).

At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Coleman had the RFC "to perform medium work as defined in 20 CFR 416.967 (c) except she should avoid all exposure to heights and hazards." (R. 20). Based on this RFC and the testimony of a vocational expert (VE), the ALJ determined that Coleman is limited to simple, routine, repetitive

10

tasks; simple work-related decisions; occasional interaction with supervisors and coworkers; no direct interaction with the public; and gradual change in a routine work setting. (R. 20). Coleman does not have past relevant work. Alternatively, the ALJ proceeded to Step Five and found that there exist a significant number of jobs in the national economy that Coleman could perform given her RFC, age, education, and work experience. (R. 25). Thus, the ALJ found that Coleman was not disabled. (R. 28).

## IV.  *Analysis*

Coleman claims that the ALJ "committed reversible error in violation of 20 C.F.R.§§404.1527(c)[7] by failing to evaluate or explain the weight accorded to the consultative examination performed by Dr. Kenneth Starkey." (Doc. 14 at 1). Additionally, Coleman maintains that the ALJ failed "to order a medical expert to clarify the medical evidence of record" pursuant to HALLEX I-2-5-34. (Doc. 14 at 2).

**A. The ALJ did not err in the decision to accord little weight to Dr. Starkey's opinion.**

"With good cause, an ALJ may disregard a treating physician's opinion, in a social security disability proceeding, but he must clearly articulate the reasons for doing so." *Winschel v. Commissioner of Social Sec.*, 631 F. 3d 1176, 1179(11th Cir. 2011). Furthermore, when and if "the ALJ fails to state with at least some

---

[7] "Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." 20 C.F.R. §§ 404.1527(c).

11

measure of clarity the grounds for his decision, in a social security disability proceeding, the reviewing court will decline to affirm simply because some rationale might have supported the ALJ's conclusion." Social Security Act, § 205(g), 42 U.S.C.A § 405(g), *Id.*

On December 16, 2016, Dr. Kenneth Starkey completed Coleman's consultative psychological evaluation. (R. 23). The evaluation described Coleman as evasive and that she "exhibited significant symptom exaggeration behaviors and that her overall motivation and cooperation for completing the tasks of the assessment appeared questionable." (R. 23). After the evaluation, Dr. Starkey concluded that Coleman had antisocial personality disorder and decided that a "more accurate diagnosis and more reliable prognosis could not be established." In addition, Dr. Starkey noted that Coleman "clearly appeared to be malingering." (R. 23).

Coleman maintains that the ALJ "gave little weight to Dr. Starkey's estimates as to functioning, but did not address any weight given to his report." (Doc. 14 at 2). Coleman references the ALJ's statement in the RFC, noting that, "Dr. Starkey himself did not consider the conclusions to be reliable and his estimates as to functioning are therefore given little weight." (Doc. 14 at 2). The Commissioner contends that the ALJ performed a proper evaluation and correctly gave Dr. Starkey's findings and conclusions "little weight", based on statements provided. The ALJ explained: "(1) Dr. Starkey's conclusion that she 'clearly appeared to be malingering' (Tr.23, 32) and (2) that Dr. Starkey's limitations are contradicted by other evidence in the record (Tr. 23-24)." (Doc. 17 at 4). Also, the ALJ noted:

12

> Dr. Starkey observed that the claimant exhibited significant symptom exaggeration behaviors and that her overall motivation and cooperation for completing the tasks of the assessment appeared questionable; for example, she occasionally referenced a non-existent person in the room talking to her, and reported the colors of the American flag to be black, yellow, and green. (Doc. 17 at 5).

As the Commissioner correctly notes, "it is the ALJ's duty to weigh medical evidence…she is not bound to adopt a medical opinion when other evidence in the record contradicts its. 20 C.F.R. §416.945(a)(3). Since an RFC assessment is not a medical assessment, the ALJ need not adopt any doctor's opinion to assess plaintiff's RFC…"(Doc. 17 at 4). Coleman argues that, "Dr. Starkey clearly stated in his medical source statement that, 'Plaintiff may have been malingering or experiencing delirium secondary to unspecified medical condition (possibly untreated Hepatitis C)." (Doc.14 at 3). The Commissioner maintains that the ALJ was unable to find information in Coleman's record that would establish prior treatment for mental health issues from a mental health professional or psychiatric specialist. (Doc. 17 at 5). Thus, the ALJ deduced that the Coleman's treatment history "did not suggest mental health findings consistent with Dr. Starkey's limitations." *Id*.

Additionally, the Commissioner maintains that the ALJ considered Coleman's report of activities during her evaluation with Dr. Starkey[8]. (Doc. 17 at 6). With

---

[8] "The claimant has described her daily activities that include watching television, reading , watching movies, playing cards, preparing her own meals, cleaning, doing laundry, washing dishes, taking out trash, and taking care of her dog. She drives a car, shops in stores, attends church, goes to sport events, uses her phone for social media such as Facebook, visits friends, and spends time playing cards (Spades) and talking with others on the phone

information attained from Coleman's report, the ALJ concluded that Coleman's mental impairments were not supported by sufficient evidence and "are not consistent with the severity of Dr. Starkey's limitations." (Doc. 17 at 7). The undersigned finds that the ALJ articulated specific reasons why Dr. Starkey's opinion was accorded little weight and substantial evidence exists to support the ALJ's determination.

**B. The ALJ did not err in its decision to not call a medical expert to clarify the medical evidence.**

Coleman next argues that under the Hearings, Appeals, and Litigations Law Manual ("HALLEX"), the ALJ failed to call a medical expert to clarify the medical evidence of record. Pursuant to HALLEX I-2-5-34, an ALJ may need to obtain an ME (medical expert) opinion, either in testimony at a hearing or in response to written interrogatories, when the ALJ determines the degree of severity of a claimant's physical or mental impairment. HALLEX states that the ALJs are required to obtain a medical expert's opinion when: (1) the Appeals Council or the court so orders; (2) to evaluate and interpret background medical test data; or (3) when the ALJ is considering a finding that the claimant's impairment(s) medically equals a medical listing. The crux of Coleman's argument concerning HALLEX, yields to the discretion of the ALJ, placing emphasis on the word "may."

---

daily. She reported she feeds, walks and bathes her dog. The claimant indicated she can go out alone and is able to take care of her own finances. She goes outside daily and gets along well with family, friends, and authority figures. She noted that she can follow spoken instructions well." (Doc. 17 ay 6-7).

Coleman maintains that the ALJ's decision to not address the second part of Dr. Starkey's examination concerning her Hepatitis C, resulted in an RFC not supported by substantial evidence. (Doc. 14 at 5-6). Coleman asserts that the ALJ "formulated a residual functional capacity that is based on a lack of medical evidence," and that "the ALJ delineated a residual functional capacity that is not supported by substantial evidence…and essentially substitutes the Administrative Law Judge's own medical opinion." (Doc. 14 at 5-6).

In response, the Commissioner argues that none of the circumstances that require appointment of a medical expert are present in this case. Specifically, that Coleman does not present facts that highlight the ALJ's failure to act within the HALLEX guidelines or that the described circumstance required an medical expert's opinion. (Doc. 17 at 8). The undersigned concurs.

The ALJ did not err in her decision to not receive the opinion of a medical expert, and pursuant to HALLEX 1-2-5-34, was not required to do so. Accordingly, the Court **OVERRULES** Coleman's claims of reversible error and finds that the Commissioner's final decision denying her benefits is due to be **AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Coleman's applications for SSI under Title XVI of Social Security Act, 42 U.S.C. § 1381, made final by the Appeals Council's denial of review on May 1, 2017, is **AFFIRMED** under 42 U.S.C. § 1383(c)(3) and sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 8th day of July 2019.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**